UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-7585
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NORMAN L. HAYMER,

Defendant-Appellant.

_____

Appeals from the United States District Court for the
Southern District of Mississippi

_____

(June 30, 1993)

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Norman L. Haymer appeals his sentence, contending that his Sixth Amendment right to counsel was violated by the inclusion of an uncounseled misdemeanor conviction in calculating his Sentencing Guidelines criminal history score. We **AFFIRM**.

I.

Haymer pleaded guilty to possession with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). In the presentence investigation report (PSR), the probation officer recommended a guideline range of 51 to 63 months imprisonment, based upon an offense level of 22 and a criminal history category

of III. The criminal history score included 2 points for committing the instant offense while on probation, 1 point for a 1987 conviction, and 1 point for a 1991 shoplifting conviction. The latter is the subject of this appeal. The PSR described the circumstances of that conviction as follows:

> Records of the Jackson Police Department indicate Haymer was arrested on May 22, 1991 and charged with shoplifting .... The defendant entered a plea of guilty to the charge in Jackson Municipal Court and was ordered to pay a fine of $300 plus court costs. On November 13, 1991, Haymer was arrested by the Jackson Police Department and charged with contempt of court for failing to pay the imposed fine and court costs. Disposition of the contempt charge has not been received as of this writing, but according to the defendant, he opted to perform 18 days of work at the Hinds County Penal Farm in lieu of paying the fine and court costs.

Although he did not file written objections to the PSR, Haymer objected, at the sentencing hearing, to the inclusion of the shoplifting conviction in his criminal history score, on the ground that he was not represented by counsel and had served 18 to 19 days in jail. Exclusion of that conviction would have lowered his criminal history score, resulting in a guideline range of 46 to 57, instead of 51 to 63, months.

After hearing testimony, the district court found that the original sentence for shoplifting consisted only of a fine, and that Haymer's incarceration resulted either from contempt of court for failure to pay the fine, or from Haymer's decision to substitute incarceration in lieu of paying it. It also found that Haymer, who was an attorney in Louisiana from 1976-1986, but was disbarred in 1990, acted as his own counsel on the shoplifting

- 2 -

charge. Haymer was sentenced to 51 months imprisonment and a five-year term of supervised release and ordered to pay a $50 special assessment and $1,000 fine.

## II.

Haymer's sole contention is that his sentence was imposed in violation of law, or as a result of an incorrect application of the Guidelines, because the uncounseled misdemeanor conviction was included in the calculation of his criminal history score.

We "will uphold a sentence unless it was imposed in violation of law; imposed as a result of an incorrect application of the sentencing guidelines; or outside the range of the applicable sentencing guideline and is unreasonable." *United States v. Howard*, 991 F.2d 195, 199 (5th Cir. 1993). "[W]hether a prior conviction is covered under the sentencing guidelines is ... reviewed *de novo*, while factual matters concerning the prior conviction are reviewed for clear error." *Id*.

In *Scott v. Illinois*, 440 U.S. 367 (1979), the Supreme Court held that an indigent criminal defendant may not "be sentenced to a *term of imprisonment*" unless the government has afforded him the right to assistance of counsel guaranteed by the Sixth Amendment. *Id*. at 373, 374 (emphasis added). Absent a valid waiver of this right, "[i]f an uncounseled defendant *is sentenced to prison*, the conviction itself is unconstitutional." *United States v. Eckford*, 910 F.2d 216, 218 (5th Cir. 1990) (emphasis added); *United States v. Follin*, 979 F.2d 369, 376 (5th Cir. 1992). But, the Sixth Amendment does not require the States to provide counsel in

criminal cases in which the defendant is not sentenced to imprisonment. *Id*. Accordingly, uncounseled misdemeanor convictions for which no term of imprisonment is imposed are constitutionally valid, may be introduced into evidence at the punishment phase of a trial for a subsequent offense, and may be used to calculate a defendant's Guidelines criminal history score. *Eckford*, 910 F.2d at 220-21; *Wilson v. Estelle*, 625 F.2d 1158, 1159 (5th Cir. Unit A 1980), *cert. denied*, 451 U.S. 912 (1981).

Haymer seeks shelter under *Baldasar v. Illinois*, 446 U.S. 222 (1980); but our court has repeatedly interpreted that case only to prohibit the use of a prior uncounseled misdemeanor conviction "under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term." *Wilson v. Estelle*, 625 F.2d at 1159 n.1; *see also Eckford*, 910 F.2d at 220. Likewise, we have repeatedly held that *Baldasar* does not prohibit the use of an uncounseled misdemeanor conviction to determine a criminal history category for a crime that *is itself* a felony. *Follin*, 979 F.2d at 376 & n.8. Needless to say, possession with the intent to distribute crack cocaine is a felony; therefore, *Baldasar* is inapplicable.

Consistent with these cases, the Guidelines provide that "uncounseled misdemeanor sentences where imprisonment was not imposed" are to be included in calculating the criminal history score. U.S.S.G. § 4A1.2, comment. (backg'd) (1991). The commentary to that section provides that "[a] sentence which specifies a fine or other non-incarcerative disposition as an

alternative to a term of imprisonment ... is treated as a non-imprisonment sentence." U.S.S.G. § 4A1.2, comment. (n.4). Application note 6 to § 4A1.2 states that "sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted" in computing a defendant's criminal history score. U.S.S.G. § 4A1.2, comment. (n.6) (1991). Application note 6 "allows a district court, in its discretion, to inquire into the validity of prior convictions at sentencing hearings." *United States v. Canales*, 960 F.2d 1311, 1315 (5th Cir. 1992).

Haymer presented no evidence that his shoplifting conviction had been previously ruled constitutionally invalid, but instead sought to collaterally attack it at sentencing. The district court, in the exercise of its discretion, entertained the challenge, but found that Haymer's sentence for shoplifting consisted only of a fine, and that his incarceration resulted either from contempt of court for failure to pay the fine, or from Haymer's decision to substitute incarceration in lieu of paying it. Based on those findings, the district court held that the conviction was not constitutionally invalid. Our task is to determine whether the district court's factual findings, regarding the circumstances of Haymer's shoplifting conviction and subsequent incarceration, are clearly erroneous.

In his testimony at the sentencing hearing, Haymer described the circumstances of his shoplifting conviction as follows: I was arrested and I

made bond. I went back to court. At the time I was working. So they . . . accused me of stealing a pack of cigarettes. So I told the judge I didn't. I was in his chamber. I wasn't in court.... I thought it would be a low fine or whate

ver. But he told me he'd accept the guilty plea and give me a fine. I thought the fine would be probably $50, you know, for a pack of cigarettes; and he fined me 300-and-something dollars. I didn't have the money, so eventually they

> sent
> me to
> jail
> to
> work
> it
> off.

> ....

> I wasn't advised that I had a right to a lawyer at the time or I would have chose to have a lawyer, if I knew that that particular thing could come back and haunt me at a later date. Or if I could have got some jail time. I didn't know I was -- you know, because he told me it was going to be a fine.

Defense counsel, relying on *Baldasar* and *Scott*, argued that, because Haymer had served 18 or 19 days in jail "as a result of the conviction and his failure to pay," the conviction was unconstitutional, and could not be used to calculate the criminal history score.

The court then questioned the probation officer, who testified as follows:

> Mr. Haymer was charged with shoplifting. He was convicted and fined $300. There was no term of imprisonment imposed, no term suspended, nothing. He failed to pay the fine. They issued a bench warrant for contempt for failing to pay the fine. According to Mr. Haymer, he opted to do or perform 18 days of work at the penal farm instead of paying the fine. In our opinion it appears to us that it was not a mandatory term of imprisonment imposed as a result of the conviction. It was an option taken on his part. And I will point out to Your Honor that I believe Mr. Haymer is -- he is an attorney. We're not dealing with someone who is ignorant of the law or his rights.

> THE COURT: The prison term came -- the time that was set forth in the sentence came as a result of a contempt --

> [PROBATION OFFICER]: That's correct.

THE COURT: -- rather than the crime itself.

[PROBATION OFFICER]: That's correct.

Defense counsel responded that Haymer's incarceration was "a direct result of the crime itself. What Mr. Haymer did was work off this fine."

The district court then asked the probation officer if she had any documentation showing that the jail time resulted from the contempt charge, rather than the initial sentence for shoplifting. She responded that she did not have any documentation as to the contempt charge, because the records of the Jackson municipal court were "awful", but that "[t]he disposition as to the contempt and the 18 days or 19 days on the penal farm came straight from Mr. Haymer." She testified that she did have documentation as to the original sentence imposed, which was a fine only. (That documentation was not introduced into evidence at the hearing, and is not part of the record.)

Haymer then testified:

> [A]t the time I was sentenced I was ordered to pay $342. If I had told the judge at that time I did not have $342 to pay, he would have sentenced me to jail. I told him I would see if I could raise $342, which he gave me about a week or two weeks or whatever. I couldn't come up with the money. I went to the penal farm because I couldn't pay the fine of $342, not because I was in contempt but because I didn't have the fine money to pay. Even after I was arrested, they asked if I could pay 50 or 100, $200, they would let me out, you know, until I could get the balance. I told them I didn't have that money. Therefore I -- they sent me to -- and it wasn't voluntary. It was mandatory that I go and work it off since I couldn't pay it.

Based on this conflicting testimony, the district court found:

> [T]he original sentence was one that required him to pay a fine and ... his subsequent incarceration came as a result of either his failure to pay the fine and therefore his arrest for contempt or some other situation wherein he decided to substitute time in lieu of paying the fine that was imposed upon him.

The district court did not clearly err in finding that Haymer's sentence for shoplifting consisted only of a fine. That finding was based on the uncontradicted testimony of the probation officer, and Haymer does not challenge it. Instead, Haymer contends that, because he was incarcerated for failure to pay the fine to which he was sentenced for shoplifting, his conviction for shoplifting is constitutionally invalid. We disagree. The district court found that Haymer's incarceration did not result from his shoplifting conviction, but from a contempt charge for failure to pay the fine, or because he opted to serve time in lieu of paying it. The evidence at the sentencing hearing amply supports that finding; it is not clearly erroneous.

Because Haymer was not "sentenced to a *term of imprisonment*" for shoplifting, his uncounseled conviction is not unconstitutional. **Scott**, 440 U.S. at 374 (emphasis added). Accordingly, the conviction was properly included in calculating his criminal history score. Haymer was subsequently incarcerated only because he failed to pay the fine. Regardless of whether the incarceration was based on a contempt charge or his choice to serve time in lieu of the fine, it does not invalidate his prior shoplifting conviction, for which the only sentence was a fine. We

stress that the constitutionality of any subsequent contempt charge resulting in incarceration is not at issue, because it was not used to calculate Haymer's criminal history score.[*]

### III.

For the foregoing reasons, the sentence is

**AFFIRMED**.

**POLITZ, Chief Judge, dissenting:**

The majority suggests that Haymer went to a penal farm of his own accord or for contempt as a result of his failure to pay a fine. Apart from the speculation of a probation officer, I find no evidence in the record of either and, in any event, perceive no controlling significance in those conclusions, absent evidence that the punishment ultimately assessed was independent of the conviction we now review. Accordingly, I respectfully dissent.

The sixth amendment provides: "In all criminal prosecutions, the accused shall have the right . . . to have the Assistance of Counsel for his defence." That is an important right. Indeed, the Supreme Court has long recognized that it is a fundamental aspect of a fair trial, the denial of which strongly implicates the reliability of the fact-finding process.[**] This constitutional

---

[*] It is unnecessary for us to address the district court's alternative finding that, because Haymer was an attorney who had practiced law for ten years, he "knew full well that he had the right to counsel" and "represented himself".

[**]**Smith v. Collins**, 964 F.2d 483 (5th Cir. 1992).

- 11 -

imperative applies to the states through the due process clause of the fourteenth amendment.[***]

The majority prudently pretermits review of the district court's conclusion that Haymer waived counsel and represented himself in his 1991 prosecution.  There is no evidence of either. Likewise, there is no evidence that Haymer was sent to the Hinds County Penal Farm for conduct discrete from his theft of a pack of cigarettes.  The only thing the record shows is that Haymer admitted stealing a pack of cigarettes from a grocery store, pled guilty, was unable to pay a fine and, according to the completely inadequate state court records, somehow found his way to the county penal farm for 18 or 19 days.

The question before us is not whether a valid uncounseled misdemeanor conviction is being used for a constitutionally invalid purpose.  Our prior interpretations of the Supreme Court's plurality opinion in **Baldasar v. Illinois**[****] limit that challenge to cases in which a subsequent conviction is being enhanced from a misdemeanor to a felony.  Rather, the question before us is whether, in light of the punishment imposed, the prior conviction is itself valid.

In **Argersinger v. Hamlin**[*****] the Supreme Court rejected the argument that petty offenses and misdemeanors are too insignificant to warrant appointment of counsel for indigents.  Distinguishing the right to appointed counsel from the right to trial by jury, the

---

[***]**Gideon v. Wainwright**, 372 U.S. 335 (1963).

[****]446 U.S. 222 (1980).

[*****]407 U.S. 25 (1972).

Court established a bright-line rule based on the punishment ultimately imposed, concluding "that incarceration was so severe a sanction that it should not be imposed unless an indigent defendant had been offered appointed counsel."[******]

Any doubt about whether the Court was concerned with the potential or actual punishment imposed was put to rest in **Scott v.Illinois**.[*******] There the Court held that an indigent misdemeanant could not obtain relief from an uncounseled conviction which, although it could have, did not ultimately result in incarceration. The Court was careful to preserve the **Argersinger** rule and summarized its previous holding as follows: "The Court in its [**Argersinger**] opinion repeatedly referred to trials where an accused is deprived of his liberty and to a case that leads to imprisonment even for a brief period."[********] Thus, if an indigent defendant has been convicted without the assistance of counsel and without expressly waiving his right to same, incarceration is not an available punishment.[*********] Sending Haymer to jail because he

---

[******]**Scott v. Illinois**, 440 U.S. 367 (1979) (paraphrasing the holding in **Argersinger**).

[*******]440 U.S. 367 (1979). **See also United States v. Eckford**, 910 F.2d 216, 218 (5th Cir. 1990) ("If an uncounseled defendant is sentenced to prison, the conviction itself is unconstitutional.").

[********]**Scott**, 440 U.S. at 373 (quotations omitted).

[*********]"The judge can preserve the option of a jail sentence only by offering counsel to any defendant unable to retain counsel on his own." **Argersinger**, 407 U.S. at 42 (Burger, C.J., concurring). The Court noted that traffic offenses typically do not require counsel. Such prosecutions would only require appointed counsel where "imprisonment actually occurs." The court pointed to a study in Washington as an example and noted that the accused in traffic court in that state only faced the possibility of jail time in

could not afford the fine without first providing him counsel violated the rule announced in **Argersinger** and, moreover, also violated the due process guarantee[**********] and controlling state law.[***********]

I do not suggest that during or after the disposition of the case the defendant is or should be immune from punishment for contempt.[************] I do suggest, however, that when reviewing the validity of the underlying conviction we should ask whether there is a meaningful difference between the punishment for contempt and punishment for the offense.

---

three scenarios, including cases in which "the convicted individual was unable to pay the fine imposed." **Id.** at 38 n.10 (citing Junker, **The Right to Counsel in Misdemeanor Cases**, 43 Wash. L. Rev. 685, 711 (1968)). **See also Wang v. Whitworth**, 811 F.2d 952, 956 (6th Cir.), **cert. denied**, 481 U.S. 1051 (1987); **Sweeten v. Sneddon**, 463 F.2d 713, 716 (10th Cir. 1972); **Colson v. Joyce**, 646 F. Supp. 102 (D. Me. 1986), **aff'd**, 816 F.2d 29 (1st Cir. 1987); **United States v. Ramirez**, 555 F. Supp. 736 (E.D. Cal. 1983); **Linkous v. Jordan**, 401 F. Supp. 1175 (W.D. Va. 1975).

[**********]**Bearden v. Georgia**, 461 U.S. 660 (1983) (state may not convert fine to prison term absent finding that defendant has not made bona fide effort to pay the fine or that no alternative punishment could serve the state's interests).

[***********]Miss. Code Ann. § 99-19-20(2); **Cassibry v. State**, 453 So.2d 1298, 1299 (Miss. 1984) ("So long as Cassibry is "financially unable to pay a fine" and the trial court so finds, he may not be imprisoned, **period**.") (emphasis in original).

[************]Of course, if the prosecution hopes to punish that contempt with incarceration, then it must provide counsel at that point. **Ridgway v. Baker**, 720 F.2d 1409 (5th Cir. 1983). The existence of the right to counsel varies according to the acuity of the defendant's jeopardy. **Mempa v. Rhay**, 389 U.S. 128, 134 (1967). Sentencing is among those critical stages of trial during which counsel's presence is constitutionally required. **Id.** Likewise, when a fine is converted to a prison term a quantum leap in severity is affected and counsel's availability is imperative. **See Argersinger**.

The majority assumes from a silent record, as did the district court, that Haymer must have been sent to jail for contempt as a result of his failing to pay the fine. The record gives no indication whatever that this assumed punishment for contempt was distinct************ from his punishment for stealing cigarettes.************** Indeed, the government suggested that the contempt charge was really a vehicle for converting the form of Haymer's punishment in view of his inability to pay.************** Under these circumstances, characterizing the subsequent jail time as a result of contempt rather than the underlying conviction elevates form over substance.

Ultimately, Haymer's punishment for stealing cigarettes, and apparently for being too impoverished to afford the fine imposed, was 18 or 19 days hard labor. The conviction is invalid absent some indication either that he waived the right to counsel before that punishment was imposed or that the jail time was for conduct other than that giving rise to the underlying conviction. I would not allow the same conviction to lead to another five months of incarceration.

---

************If this were true, then one would expect that the fine would not be discharged after his time in jail. Again, the record does not support such a finding. The majority apparently assumes that the jail time was simply substituted for the fine as punishment.

**************There is no evidence, for example, that Haymer was disrespectful of the court or brazenly refused to pay the fine despite being able financially to do so. The evidence indicates to the contrary; he simply was impecunious and could not afford it.

***************Of course, this also would be unconstitutional. **Bearden.**

I respectfully DISSENT.