*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# District of Columbia Court of Appeals

**No. 17-CO-441**

UNITED STATES,

Appellant,

v.                                                                                **CF2-10498-15**

JAMES BUMPHUS,

Appellee.

BEFORE: Blackburne-Rigsby, Chief Judge, and Glickman, Thompson, Beckwith,* Easterly,* and McLeese, Associate Judges; Fisher,*† Senior Judge.

**O R D E R**
(FILED— February 25, 2021)

On consideration of appellant's petition for rehearing or rehearing *en banc*, appellee's opposition to appellant's petition for rehearing or rehearing *en banc*, and it appearing that a majority of the judges of this court who are in regular active service and who are not disqualified has not voted to grant the petition for rehearing *en banc*, it is

ORDERED by the merits division* that appellant's petition for rehearing is denied.  It is

FURTHER ORDERED that appellant's petition for rehearing *en banc* is denied.

**PER CURIAM**

Chief Judge Blackburne-Rigsby and Associate Judges Thompson and McLeese would grant rehearing *en banc*.

Associate Judge Deahl did not participate in this case.

*† Judge Fisher was an Associate Judge at the time of argument. His status changed to Senior Judge on August 23, 2020.

Senior Judge Fisher would grant rehearing.

Judge Easterly concurs separately. (See page 2)

Judges Thompson, McLeese, and Fisher dissent separately. (See page 3)


EASTERLY, *Associate Judge*, concurring in the denial of the petition for rehearing en banc: When an individual declines to give the police consent to search their car, a reasonably well-trained officer knows that, if he has probable cause to believe the car contains contraband, he can search the car without consent and without a warrant. A reasonably well-trained officer also knows he can go to a judge—outside of business hours, if need be—and get a warrant. The officer in this case, a sergeant with thirteen years of experience, did neither of these things. As the trial court found, he had no credible, justifiable reason for not searching Mr. Bumphus's car on the night he seized it or in the days that followed. (As the trial court also found, the officer similarly lacked a credible, justifiable reason for holding Mr. Bumphus in handcuffs for two and a half hours on the night of the seizure.) The officer demonstrated not "the slightest shred of diligence" and expressed "outright disregard for the adverse effect such a delay might have on the [significant] possessory interests of [a] vehicle's owners." The implication was that the officer had "waited" to conduct the search in order to withhold the car and its contents (including Mr. Bumphus's wife's purse and cellphone, and his child's backpack, "things" the trial court observed "many people would consider necessities of daily life") from Mr. Bumphus. In other words, this was delay for delay's sake.

The Fourth Amendment only authorizes reasonable searches and seizures by government agents. A search that is delayed for no reason and without resort to any process is, perforce, not a reasonable search under the Fourth Amendment—a proposition the government conceded in the trial court and does not dispute in its petition for rehearing. Just because no other court appears to have issued a factually analogous decision does not make our court's opinion affirming the trial court's

suppression ruling legally groundbreaking, much less a misguided extension of Fourth Amendment principles. To the contrary, legitimizing this officer's manifestly unreasonable conduct would clearly run afoul of the Fourth Amendment, and suspending the application of the exclusionary rule on these facts would unjustifiably undermine its protections. Rehearing or rehearing en banc for either purpose is rightly denied.

For the reasons stated in his dissent from the opinion issued by the division, Senior Judge Fisher dissents from the denial of the petition for rehearing. He is not authorized to vote on the petition for rehearing en banc.

THOMPSON, *Associate Judge*, dissenting from the denial of the petition for rehearing en banc: For the reasons set out in Judge Fisher's dissent from the Division opinion, I dissent from denial of the petition for rehearing en banc. I note also that the result the Division upheld was particularly unwarranted given that it was Mr. Bumphus who initially caused the delay in searching his car by "thr[owing] his keys to an unidentified person who left the scene," 227 A.3d at 561, and then saying, "no" when the officer "repeatedly asked him for the keys." He should not be rewarded for that obstructionist behavior by suppression of the gun.

MCLEESE, *Associate Judge*, dissenting from the denial of the petition for rehearing en banc: It appears to be undisputed that the police lawfully seized Mr. Bumphus's car without a warrant, based on probable cause to believe that Mr. Bumphus illegally possessed a firearm in the car. *United States v. Bumphus*, 227 A.3d 559, 561 n.1 (D.C. 2020). After obtaining a warrant, the police searched the car and discovered a firearm. *Id.* at 562. The court holds that evidence of the discovery of the firearm must be suppressed, because the police violated the Fourth Amendment by waiting approximately four days (which included a weekend) before obtaining a warrant to search the car. *Id.* at 563-71. In my view, the court incorrectly decides two exceptionally important legal issues and fails to follow binding contrary authority. I therefore respectfully dissent from the denial of the petition for rehearing en banc.

First, I do not agree that the four-day period between the seizure and the search in this case was unreasonable under the Fourth Amendment. I am aware of no decision finding a remotely comparable delay to be constitutionally unreasonable. The cases relied upon by the court involve delays that range from well over a year

to twenty days. *Bumphus*, 227 A.3d at 565 n.7. Courts addressing delays comparable to that in this case appear to have consistently held that the delays were not constitutionally unreasonable. *See, e.g.*, *United States v. Johns*, 469 U.S. 478, 479-88 (1985) (three-day delay in conducting warrantless search of lawfully seized packages not unreasonable); *United States v. Howard*, 991 F.2d 195, 197, 202 (5th Cir. 1993) (two-day delay in searching car not unreasonable; court does not identify any reason for delay other than that officer chose to get warrant); *State v. Stacey*, 198 A.3d 257, 259-63 (N.H. 2018) (five-day delay in obtaining warrant to search car not unreasonable; trooper "did not believe that the situation was sufficiently urgent to merit calling an on-call judge on a Sunday or holiday").

In my view, barring unusual circumstances not present here, relatively brief delays, such as the delay in this case, are simply not unreasonable, even if the police offer no particular justification for the brief delay. That conclusion finds strong support from the circumstance that, even if the police had immediately gotten a search warrant in this case, they ordinarily would have had ten days to execute the warrant. D.C. Code § 23-523(a) (2012 Repl.); Super. Ct. Crim. R. 41(f)(1). In this case, the police executed the warrant the same day they got it. *Bumphus*, 227 A.3d at 562. If the police in this case could lawfully have gotten a warrant immediately and then waited ten days to execute the warrant, I fail to see how it could be constitutionally unreasonable for the police to wait four days to get a warrant but then execute the warrant immediately. *See State v. Schilling*, 192 Wash. App. 1063, 2016 WL 885256, at *3 (App. Ct. Mar. 7, 2016) (unpublished) (Because warrants can be executed within a ten-day period, a six-day delay in getting a warrant to search a car resulted in a seizure that "was for a shorter duration than would have been authorized by a warrant issued at the earliest opportunity. This also supports the court's determination that the seizure was reasonable.").

Second, even if the seizure of the car was unreasonably prolonged, suppression of evidence was not justified. *Bumphus*, 227 A.3d at 571-72 (Fisher, J., dissenting). If the police had gotten a warrant immediately, they might not have searched Mr. Bumphus's car any sooner than they did, given that they would ordinarily have been given ten days to execute the warrant. Even if the police had searched the car immediately, however, they still would have discovered the firearm in the car. As Judge Fisher explains in his dissent, the delay in obtaining a warrant thus was not a "but-for" cause of the discovery of the firearm. *Id.* That being so, controlling authority precludes suppression of evidence. *See, e.g.*, *Hudson v. Michigan*, 547 U.S. 586, 592 (2006) ("[B]ut-for causality is . . . a necessary . . .

condition for suppression."). I am not persuaded by the court's responses to this problem. The court appears to suggest that perhaps the police would have simply released Mr. Bumphus's car rather than searching it, *Bumphus*, 227 A.3d at 570 n.15, but that suggestion is both unsupported and entirely implausible. The court also appears to assert that in fact the delay in obtaining the search warrant did cause the recovery of the firearm. *Id.* at 570. The court does not explain the basis for that assertion, however, and I can see no basis for the assertion. It is true that the seizure of the car was a but-for cause of the discovery of the handgun, but that seizure was lawful. As *Hudson* makes clear, the requirement is that the "illegal *manner*" of the seizure -- in this case, the supposedly unlawful delay in obtaining a warrant -- be "a but-for cause of obtaining the evidence." 547 U.S. at 592. In this case, that requirement was not met.

Copies emailed to:

Honorable Maribeth Raffinan

Director, Criminal Division

Copies e-served to:

Samia Fam, Esquire
Public Defender
Service

Elizabeth Trosman,
Esquire Assistant United
States Attorney

pii